**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| TLS MANAGEMENT AND MARKETING SERVICES, LLC<br><br>　Plaintiff<br><br>　　v.<br><br>RICKY RODRIGUEZ TOLEDO; LORRAINE RAMOS, et als.<br><br>　Defendants | CIVIL NO. 15-2121 (FAB)<br><br>PRELIMINARY AND PERMANENT INJUNCTION; STORED COMMUNICATIONS ACT; WIRETAP ACT; COMMERCIAL SECRETS ACT; BREACH OF CONTRACT; CONVERSION; AND TORTIOUS INTERFERENCE |

**OPPOSITION TO "MOTION FOR PRELIMINARY INJUNCTION"**
**AND TO "MOTION SUPPLEMENTING REQUEST FOR PRELIMINARY**
**INJUNCTION"**

**TO THE HONORABLE COURT:**

COME NOW Defendants Ricky Rodríguez, Accounting Solutions Group ("ASG") and Global Outsourcing Services ("GOS"), through the undersigned attorney, and very respectfully allege and pray as follows:

INTRODUCTION

On August 8, 2016 TLS filed a "Motion for Preliminary Injunction" requesting that herein appearing Defendants be barred from "using and disclosing TLS' Confidential Information". See, dkt. 130. This motion was "supplemented" on August 23, 2016 to reiterate[1] TLS' injunctive request. See, dkt. 134. According to TLS, it has renewed its request for preliminary injunction "spurred by the discovery of continuing unauthorized disclosures of its Confidential Information" and "armed with new information and documentation provided by Dropbox, Inc. ("Dropbox") last week in response to a subpoena" which supposedly "confirms that Rodríguez purposely shared multiple documents and files containing TLS's Confidential Information with unauthorized third parties while he was still an employee of TLS…". See, dkt. 130 at FN1 and dkt. 134 at p. 1-2.

TLS' preliminary injunction request should be denied on various grounds. First, the Court does not have jurisdiction over the case. Second, even if it did, the state cause of action on which the injunction request is premised cannot survive on the merits. Third, as per TLS' allegations in its injunctive request, Rodríguez' "unauthorized disclosures" took place, mainly, "while he was still an employee of TLS". But, Rodríguez has not had access to TLS' Dropbox files since then,

---

[1] Rodríguez hereby timely addresses the original and "supplemental" request by TLS for the issuance of the preliminary injunction, inasmuch as the original request was reiterated on August 23.

in January 2015. Given such reality, there is no real ongoing concern for TLS that he is disclosing anything to anyone. Fourth, Rodríguez explicitly explained in his answers to interrogatories that he copied TLS' files to which he was authorized access in order to submit a complaint before the IRS.  After that, he is no longer in custody of TLS' "confidential information". As such, TLS' request for a preliminary injunction is moot.

ARGUMENTATION

A.    <u>The Court has no jurisdiction over the instant case</u>

TLS is attempting to manufacture federal jurisdiction where there is none.  To do so, it has brought claims under the Stored Communications Act ("SCA") and the Wiretap Act.  But, as argued in Defendants' motion to dismiss, the Court has no jurisdiction over the instant case because there are no facts upon which such causes of action may be sustained.  TLS filed an original complaint, with approximately 35 exhibits on August 17, 2015.  It then filed an amended complaint with the same exhibits on March 9, 2016.  On August 8, 2016, it filed a motion for preliminary injunction, with about 45 exhibits. And, on August 23, 2016 it filed a "supplement" to its injunctive request with 8 exhibits.  Yet, none of those exhibits establish that TLS has any federal cause of action against Rodríguez.

The SCA states that whomever (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished. 18 U.S.C. §2701(a).  As the Court can see, <u>even after TLS has had the opportunity to review the full log of Rodríguez' use of TLS' Dropbox account</u>, TLS has not mentioned one single unauthorized access by Rodríguez to TLS' Dropbox account.  Rather, TLS has based its injunctive request in a state cause of action dealing with Rodríguez' alleged breach of a non-disclosure agreement and the alleged use that he gave to the files that he accessed, with authorization.  But, this is not actionable under the SCA.

Recognizing the weakness of its request for preliminary injunction, TLS "supplemented" its request for preliminary injunction based on data it recently obtained from Dropbox, which TLS never bothered to produce to Defendants until its filing in Court.  In such supplemental motion, TLS, once again, complains that "Defendants used TLS' Dropbox Account to illicitly share or otherwise use its Confidential Information". <u>See</u>, dkt. 134 at p. 2.  But, even assuming as true that

Rodríguez "shared" information with GOS, that does not create federal jurisdiction under the SCA. The SCA only prohibits unauthorized access, not "the disclosure or use of information". Certainly, TLS may not like the alleged use that Rodríguez gave to TLS' so-called "confidential information". But, because the SCA does not involve itself with the use that is given to information that was obtained, with or without authorization, TLS has not actionable grounds neither to sustain the instant complaint nor to obtain the injunctive relief it has sought from this Court. For that reason, TLS is missing the mark.

To avoid repetition, Rodríguez incorporates by reference the arguments already raised in his motion to dismiss, currently under Court review, as grounds to deny TLS' request for a preliminary injunction. See, dkt. 78. But, in a nutshell, it is Defendants' position that because the Court does not have jurisdiction over the instant case, it should be dismissed, together with TLS' request for a preliminary injunction.

B.    The State cause of action in which TLS supports its request for Preliminary Injunction cannot survive either.

As the Court can appreciate, neither in the "Motion for Preliminary Injunction" nor in the "Motion Supplementing Request for Preliminary Injunction", TLS has brought any arguments or evidence that Defendants accessed, altered access, or intercepted its Dropbox account, without authorization. After all Rodríguez was, as acknowledged by TLS in its Amended Verified Complaint, the Dropbox administrator. The real reason why the Court has the instant case before its attention is that TLS is upset that Rodríguez resigned and started his own business, supposedly using the same tax strategies and products set forth in TLS' confidential documents, to "steal away" its clients.

To address such issues, TLS included in its Amended Verified Complaint various state causes of action, including the breach of a confidentiality and non-disclosure agreement and Puerto Rico Law 80 for the protection of "Commercial Secrets". Based on said causes of action, TLS has moved the Court to issue a preliminary injunction against Defendants. Yet, TLS has no possible recourse on such grounds. As the Court can see, in almost all the instances in which TLS complains that Rodríguez allegedly shared "confidential" information, it mentions communications with Mr. Harris, Mr. Schumacher, and Mr. and Mrs. Renguso (hereinafter, referred collectively to as "the Clients"). These were former clients of TLS that had engaged the

services of TLS to create a tax reduction strategy under Act 73 of 2008.[2]   After a few years with TLS, these Clients decided to exit TLS' "PR Strategy" for their own personal and business reasons. See, **Exhibit 1**.  Since TLS' services were no longer required to maintain a "PR Strategy", the Clients hired Rodríguez' firm--ASG-- to help them withdraw from the strategy placed by TLS. There is nothing illegal nor wrongful in this.  Certainly, TLS' clients are free to terminate their relationship with TLS whenever they want to or need to and they are also free to hire whomever they wish to provide them other kind of services not provided by TLS.  That is what they did: they terminated the relationship with TLS and sought help to minimize their tax impact on leaving the "PR Strategy"[3].

Upon their departure from TLS, Rodríguez and ASG used their expertise in accounting, tax, banking, and insurance laws to provide the Clients the required financial advice to exit the "PR Strategy", with the lesser tax impact.  But, this did not happen in the vacuum.  To provide such advice, the Clients sent Rodríguez and other professionals all pertinent documents related to the "PR Strategy" enacted by TLS. See, **Exhibit 2**.  Based on the analysis of said documents, Rodríguez was able to accomplish his job and create a structure wherein these Clients would suffer the lesser tax impact on their departure of the "PR Strategy".  But, TLS has alleged that, in doing so, Rodríguez disclosed to the Clients, TLS' a) "methods, systems, and procedures"[4]; b) "costs, prices, products, formulas and compositions"[5]; c) "prospective and executed contracts, other

---

[2] Generally, under this Act, a business in Puerto Rico that exports services does not have to pay federal taxes and has a preferential Puerto Rico tax rate, among others benefits.

[3] During Rodríguez' time at TLS, there was no such "PR Strategy" term.  TLS had a strategy involving Puerto Rico tax benefits called "USP strategy" for "U.S. Possession".

[4] For instance, TLS complains that Rodríguez pushed the Clients to go over tax matters, "including the PFIC issue". According to TLS, whether TLS is a passive foreign investment company ("PFIC") is the company's "Confidential Information".  But, it is not. The "PFIC" regime is not a business method nor strategy of TLS.  The PFIC regime is created under the U.S. Internal Revenue Code §1291 to provide an anti-abuse prevention mechanism for U.S. taxpayers. In general, all PFIC designated entities, must pay taxes in the United States. In the case of TLS, it apparently has a PFIC designation, for which reason its clients should be paying federal taxes. Certainly, the Clients in the case are entitled to know whether TLS is a PFIC or not, so they know whether they have to pay federal taxes or not.  Lack of due payment would create a material taxable event.  But, TLS does not want to provide such information to its clients, although it knows it is creating exposure to them.  The same applies to TLS' allegations that Rodríguez moved third parties to disclose him information he was supposedly not authorized to see regarding "U.S. reporting/disclosure of the strategy".  See, dkt. 130 at p. 12.  In order to provide his services to his Clients, Rodríguez did need to know the "reporting/disclosure strategy" by TLS.  Once Rodríguez discovered this TLS "reporting/disclosure strategy" was in violation to the Code of Internal Revenue, he was able to advise his clients to avoid tax and legal issues ahead.

[5] For instance, TLS states that when Rodríguez said "[t]he $30k monthly payments are not necessary for the loan covenants", he shared "loan collateralization procedures within TLS tax strategies". See, dkt. 130 at p. 11.  But, this is not so.  This is a plain reading of the documents that the Clients provided to Rodríguez and that Clients already had.

business arrangements and project plans"[6]; d) "the name of agents, contractors, consultants, sales representatives and strategic partners"[7]. TLS brought forward various examples of alleged "illicit disclosures", which are difficult to address on an item by item basis. In the footnotes, some of these alleged examples are discussed with detail.

But, at the end, TLS' allegations that Defendants are sharing its "confidential information" with the Clients and/or third parties are incorrect. Rodríguez has not "illicitly shared" any TLS' confidential information, neither with GOS, nor with the Clients, nor with third parties. First of all, the "PR Strategy" upon which TLS claims its "confidentiality right" is a general term used by TLS referring to its use of Act 73 for exporting services from Puerto Rico, in compliance with some criteria established in the Act to minimize taxes. TLS does not have a monopoly over this. There are many tax firms in Puerto Rico that use Act 73 and the "PR Strategy" to minimize federal taxes to clients. The Act, its applicable regulations, government approved forms and templates are public documents over which TLS cannot exert any kind of proprietary claim.

Second, Rodríguez and/or ASG did not disclose any of TLS' information to the Clients because they had knowledge and access to their own documents at the time they became TLS' clients. It was actually the Clients who surrendered all their TLS' related documents to Rodríguez in order for him to assist them. As it refers to GOS, in its "supplemental" motion for preliminary injunction, TLS claimed that although Rodríguez denied that GOS had any access to TLS' Dropbox account, the log produced by Dropbox showed otherwise. But, TLS is confused. During his employment at TLS, Rodríguez may have created a "GOS" folder within the TLS' Dropbox account. But, this does not amount to access by GOS to TLS' account. Actually, Rodríguez only became a stock-holder of GOS on February 1, 2015, after his resignation from TLS. See, **Exhibit 3.** Before that time, GOS was simply an ASG client. As such, when Rodríguez answered under

---

[6] According to TLS, Rodríguez "takes advantage of his knowledge of their terms [of executed agreements] to advise third parties on how best to sever their relationships with TLS". See, dkt. 130 at 15. But, TLS has had for a very long time evidence that the Clients abandoned the TLS' strategy on their own and free will due to their own personal and business circumstances. Other than those Clients, TLS has not been able to mention any other client which Rodríguez has "stolen away" because none exists. This shows that TLS' claim that Rodríguez is using his knowledge of executed contracts to advise TLS' clients on how to leave the TLS' strategy is unfounded. As a further example of Rodríguez' alleged use of TLS' "business arrangements", TLS mentions that Rodríguez used a TLS template for an operating agreement. See, dkt. 130 at 13. But, the word "template" speaks for itself. And, a mere perusal of the document reflects is contains absolutely no "confidential information" whatsoever nor any kind of "commercial secret".

[7] TLS complains that Rodríguez disclosed to the Clients the sales channel Todd Mardis. See, dkt. 130 at 17. But, this is not something that Rodríguez "disclosed" to them; this is something that the Clients knew because they were TLS' clients. Just the same, TLS complains that Rodríguez told Mr. Renguso to contact "Hebe Lugo" to set up a Linked In account. But, this amounts to absolutely no disclosure whatsoever about TLS. Furthermore, Mr. Renguso personally knew Hebe Lugo. Finally, TLS forgot to mention that she was an independent contractor who, by the date of the incident, was no longer under contract with TLS.

oath that he never gave access to GOS of TLS' Dropbox account, it is absolutely true. Finally, as it refers to <u>Third Parties</u> (other than the Clients), TLS only mentioned Ora Goldman, Doug Clancey and Elgin Allen.  <u>See</u>, dkt. 130 at p. 11-12.  But Exhibits 26-28 related to these persons clearly reflect that absolutely no "confidential information" was discussed with them.  TLS' mind-reading powers to second guess Rodríguez "intentions" and to interpret and infer his words are a clear proof that TLS is holding on to nothing to maintain the current litigation against Defendants[8].

<u>Third</u>, once the Clients decided to terminate their relationship with TLS and to engage the services of ASG, it was up to Rodríguez to seek whatever services he required (legal or otherwise) to ensure that his "exit strategy" was feasible. Certainly, it is not for TLS to determine what professionals Rodríguez or the Clients may consult in order to achieve the best solution to their tax situation.

<u>Fourth</u>, TLS cannot enjoin Defendants nor third parties from commenting on public information pertaining to TLS, such as the judicial proceedings initiated by or against TLS.  This is so much more the case when the information was learned by Rodríguez <u>after</u> his resignation from TLS.

<u>Fifth</u>, TLS cannot enjoin Defendants from writing academic articles, such as the one that Rodríguez published on his LinkedIn account ("Top 6 Reasons Why the PR Strategy is Better than a CHIC") just because the subject matter is related to tax reduction mechanisms allowed by law. TLS has absolutely no proprietary rights over this[9].

<u>Sixth</u>, TLS' injunctive request against Rodríguez, ASG and GOS is based on hypothesis and "safe assumptions" about Rodríguez' alleged disclosure of TLS' "confidential information" to third parties[10].  But, such hypotheses are plain wrong. And, injunctions should not be issued on this kind of "evidence".

---

[8] As a matter of fact, TLS has also brought litigation against other former employees on the same grounds related to covenants not to compete and "confidential information". For instance, the Court may take judicial notice of an action filed by TLS in Mississippi, <u>TLS v. J. Todd Mardis</u>, Case No. 14-881-CWR-FKB, which is still ongoing.

[9] The article was fully written by Rodríguez and portrays his analysis of why qualifying for the protection of Act 20 is a better option than that of a Closely Held Insurance Company ("CHIC"). In the article, Rodríguez analyses the benefits and advantages that each mechanism provides to conclude that Act 20 offers better tax protection. Why TLS believes that it is the owner of the concepts approved under Act 20 or CHIC is simply ignored.  Why TLS believes Rodríguez cannot practice his expertise in financial and accounting matters to write an article in his LinkedIn space, is also unknown.  The truth is that TLS is indirectly taking the position that Rodríguez cannot work on Act 20 because it belongs to the exclusive domain of TLS.  But, it does not.  Additionally, TLS is not even licensed under Act 20 nor its principals are insurance producers licensed in Puerto Rico.

[10] For instance, TLS hypothesized that Rodríguez talked to a Mr. Larry Friedman to discuss "Friedman's relationship with TLS".  As the exhibit itself reflects, Rodríguez only contacted Mr. Friedman when a third party gave him Mr. Friedman's card, obviously, for Rodríguez to contact Mr. Friedman.  Rodríguez plainly invited Mr. Friedman to call him to discuss his "new venture".  From there, TLS gathers its contracts with Mr. Friedman were discussed.  But, such a thing is impossible because by February 24, 2015 Mr. Friedman was not even TLS' client.

C.    <u>TLS has nothing new to move the Court to issue a Preliminary Injunction</u>

TLS moved for a preliminary injunction allegedly upon its "new" discovery of continued "unauthorized disclosures" of TLS' "confidential information" by Rodríguez. But, this is not true. As per the motion supplementing the injunction request, the new transaction log produced by Dropbox shows that Rodríguez only accessed TLS' Dropbox account "while he was still an employee of TLS". <u>See</u>, dkt. 134 at p. 2. Rodríguez resigned at TLS on January 2015. Thus, this "new" evidence received by TLS shows absolutely nothing to request a preliminary injunction against Defendants. Quite the opposite, it confirms the truthfulness of Rodríguez' answers to discovery in which he clearly specified that after his resignation at TLS, he has no longer had any access to TLS' Dropbox account. <u>See</u>, **Exhibit 4**, answer to interrogatory 8.

Other than that, as per the voluminous exhibits submitted by TLS in its motion for preliminary injunction, all documents (but Exhibits 26-28) in support thereof are related to Rodríguez' professional services to the Clients. These documents were produced to TLS by the legal counsel of the Clients. In exchange for said production of documents, TLS filed notices of voluntary dismissal against them on December 22, 2016 and June 17, 2016. <u>See</u>, dkts. 57 and 126. By such date, TLS had all information that it is now claiming it received by "new" discovery. And all, but one exhibit, submitted by TLS refer to acts by Rodríguez in mid-2015[11]. This shows, once again, that even if it could be understood that Defendants had shared TLS' "confidential information" with the Clients (which Defendants deny and only deem as true for argumentation purposes), they have not done so since 2015. Even more, TLS has had knowledge for a long time now that the Clients did not depart the "PR Strategy" because Defendants lured them to do so. As per Exhibit 1, they did so for their own reasons. TLS may not like such reality. But, that is the fact. All of this reflects that discovery has not shown anything "new" that could move TLS to request its preliminary injunction. If anything, discovery should be moving TLS to desist from its complaint. But, it will not do so. This obstinate kind of behavior will expose TLS to attorney's fees.

The real reason why TLS has requested injunctive relief is that, as per Rodríguez' responses to TLS' interrogatory, the only copy he made of TLS' Dropbox files, outside of the range of his

---

[11] The last alleged "unauthorized disclosure" by Rodríguez was placed by TLS on May 2016. The alleged disclosure by Rodríguez at that time was to give his expert opinion, based on the Client's documents, that "the execution of the [loan's] collateral will create a taxable event". <u>See</u>, dkt. 130 at 9. How Rodríguez breached a "confidentiality clause" by issuing his opinion on a tax matter that he was engaged to provide simply defies all imagination.

duties as TLS' employee, was to file a complaint before the IRS related to the illegal tax practices of the principals of TLS, Mr. Dave A. Runge and Mr. Richard M. Colombik.  See, Exhibit 4, answer to interrogatory 9. The illegal schemes by these two persons have an estimated IRS impact of over $13 million.  TLS cannot enjoin Rodríguez from the protection of the Whistleblower Act, nor can TLS avoid his disclosure to the pertinent agencies of the illegal schemes that are implemented at TLS.  The IRS has also given special importance to the fact that Mr. Colombik was debarred from his attorney license in Illinois in 1999 due to misappropriation of funds. See, **Exhibit 5**. Also, in 2008, Mr. Colombik was reprimanded by the Illinois CPA board and he was fined for violating the Illinois Public Accounting Act. See, **Exhibit 6**.  Mr. Runge, on the other hand, was the subject of a complaint in Pennsylvania for portraying himself as a lawyer, when he is not.  See, **Exhibit 7.**

Also, as clearly reflected in TLS' discovery requests to Rodríguez, a secondary reason why TLS has moved for injuctive relief now is that it is concerned that Rodríguez is or has participated in various litigations against TLS in other jurisdictions.  See, Exhibit 4, interrogatories 13 and 14. These are some of those litigations:

Aaron Dean Franson v. TLS and David A. Runge, Case No. 2015CV30022-  This was a lawsuit filed in Colorado against TLS and Mr. David Runge for material misrepresentations, concealing information, providing a sham contract, fraud, breach of fiduciary duty, unjust enrichment and negligence.  See, **Exhibit 8.** After the first hearing to argue TLS' motion to dismiss, Mr. Runge decided to settle the case.

Blueprint v. TLS, Case No. C-13-00619-  This was a lawsuit filed in California against TLS regarding breach of contract, unfair business practices, fraud, deception, misrepresentation, concealed material facts, unlawful conduct, among others, regarding the strategies used by TLS. See, **Exhibit 9**.  TLS settled the case in exchange of having plaintiff desist from filing a complaint in the IRS and the district attorney's office in California.[12]

There is also a new litigation recently brought by Mr. Runge's ex-wife, in Colorado, regarding fraud in the community property division when they were in divorce proceedings.

With its injunctive request, TLS wants to ensure that Rodríguez will not disclose any information known to him related to fraudulent acts by TLS.  But, in his answers to interrogatories

---

[12] Rodríguez no longer keeps copy of this document because he sent to the IRS, together with a full copy of TLS' Dropbox files. But, TLS may produce it to the Court as it certainly keeps copy of the documents related to this litigation.

Rodríguez already responded that "I have nothing to do with the legal actions that various individuals/entities have commenced against TLS and Mr. Runge and I have shared no information whatsoever with any such individuals/entities". See, Exhibit 4, answer to interrogatory 13. The TLS' clients that have realized what is really going on with TLS "strategies" have discovered it on their own.  And, if Mrs. Runge discovered that her ex-husband hid assets to defraud her in the division of the community property upon divorce, she also discovered it on her own.  With utmost creativity, TLS has now embarked on a full fishing expedition in an attempt to link Rodríguez to every litigation that has been commenced against TLS or its principals.  This further confirms that TLS has nothing on the plate to support its allegations in the Amended Verified Complaint.  Its purpose in the instant litigation is merely vindictive.

The lack of evidence to support its claim against Defendants has led TLS to fabricate it. **TLS has falsified and submitted forged evidence to this Court in the instant case**.  The Court can only compare documents at dkt. 74-21 and 130-26.  In the latter, the top portion of the email chain at dkt. 74-21 has disappeared.  And, this is so because that top portion of the email, supposedly sent by Frank DeVincent, was not drafted nor sent by him. See, **Exhibit 10**. Interestingly enough, TLS included this exhibit at dkt. 130-37 (p. 10) to establish that because Rodríguez confirmed to Mr. DeVincent the authenticity and date of his signature in a TLS' agreement, "it is safe to assume" that Rodríguez discussed some TLS' strategies related to the client with his attorney. See, dkt. 130 at 14.  But, it would be best for TLS not to have any further "safe assumptions". A full review of the transcript of said litigation reflects that Rodríguez's conversations with Mr. DeVincent actually had to do with TLS' falsification of evidence for the instant case.  As per the witness' statement under oath, Rodríguez "sent me a copy of the [instant] lawsuit with an alleged memo signed by me or authored by me, which was completely fraudulent". See, dkt. 130-37 at p. 14.

Certainly, not everybody is fit to work at a firm where illegal actions are implemented in the course of regular business to cheat on clients and the IRS.  Certainly, Rodríguez was in all his right to resign from TLS and start a new beginning away from said practices.  And, certainly, Rodríguez is not interested in copying or stealing such illegal schemes to apply them to his own clients.  TLS may believe that its non-disclosure and confidentiality provisions will shield it from criminal action. But, Rodríguez has a duty as a citizen and as a member of the accounting profession to denounce what he understands is illegal activity.  He rightfully did so.  His actions

are also aligned with the intention of the U.S. Congress to motivate people to notify the IRS of first-hand knowledge of tax-evasion and illegal schemes. This is not an actionable cause of action by TLS, although it can be easily understood why TLS wants absolutely no information to go anywhere—to keep its "strategies" within the four walls of TLS.

D.      The issuance of a preliminary injunction is not adequate relief

TLS has requested that Rodríguez and his ASG and GOS accounting corporations be barred from "utilizing and disclosing" TLS' "confidential information" to third parties and that he be ordered to return the "confidential information" to TLS.  But, said request for relief is moot.  As informed to TLS during the initial scheduling hearing, Rodríguez no longer keeps copy of the TLS' documents that he worked with while he was an employee there. This was later confirmed in answers to interrogatories. See, Exhibit 4, response to interrogatory 13.  Rodríguez' only purpose in copying TLS' "confidential documents" was to inform the federal authorities of TLS' illegal acts.  Once this was accomplished, Rodríguez had no further use to any TLS' "confidential documents".   Defendants may not be precluded from not disclosing what they actually do not possess nor can they be ordered to return what they no longer have.

TLS also requested that Defendants be ordered to retrieve TLS' "confidential information" from the third parties to whom it was disclosed. Defendants are unsure who the "third parties" that TLS is referring to may be.  Because TLS had a business relationship with the Clients pursuant to which TLS surrendered its documents to them, it would seem, then, that TLS is simply requesting that Rodríguez be ordered to have the IRS return to him all the TLS documents which he submitted in support of his complaint.  The Court can see, then, how TLS' only intention in the case of caption is to have all evidence of its illegal acts shielded from government review.  It is too late. Defendants are entitled to file complaints if they feel illegal action is being committed.  They did so.  And, TLS' entitlement to "confidentiality" cannot amount to a cover up of illegal action.  For that reason, TLS' request to have the IRS return TLS' confidential documents should be denied.

Also, although TLS does not mention anything pertaining to GOS' website, in its proposed order at dkt. 130-47, TLS asked that GOS be ordered to take down all internet sites using TLS' "Confidential Information".  But, Defendants' internet sites have no "Confidential Information". A mere perusal to the web page of GOS reflects it is just an informative page listing, in general, the different kinds of services provided by the firm and the resources.  TLS simply wants the Court to shut down Defendants' business because they are afraid it will be competition.  But, this is a

free market.  If TLS really knows its business and it really believes in the quality of its service, it should not be afraid neither of competition nor of the IRS.

CONCLUSION

The Court should deny TLS' motion for preliminary injunction because TLS has no likelihood of success; there is no irreparable harm nor potential of irreparable harm by Defendants' alleged actions; the requested relief is moot; and the injunctive request sought goes against the public interest.

TLS has no likelihood of success in the instant case because the Court has no federal jurisdiction over the subject matter.  As per the Dropbox log submitted by TLS to supplement its request for preliminary injunction, Defendants have had no access to TLS' Dropbox account since Rodríguez' resignation from TLS in January 2015.  At all times during his employment, Rodríguez was the Dropbox administrator at TLS.  As such, all access he had to Dropbox was with authorization.  This fact precludes jurisdiction under the SCA.

In a similar fashion, TLS' State causes of action cannot survive, either.  Even assuming as true that Defendants "shared" TLS' "confidential information" with the Clients or third parties, the exhibits filed by TLS reflect that all such "sharing" stopped in 2015.  Additionally, because it was the Clients who hired Defendants to provide them tax and financial services, it was not Rodríguez who shared TLS' information with the Clients, but the other way around.

TLS has not shown—nor can it show—that it will suffer irreparable harm unless injunctive relief is granted.  As a matter of fact, Rodríguez has informed that he currently keeps no control of any TLS' documents during his employment at the firm.  As such, TLS' request for relief is moot: Rodríguez cannot be refrained from disclosing what he does not have.

Also, TLS' request for injunctive relief goes against the public order. On the one hand, public policy goes against precluding a professional, like Rodríguez, from working in his profession.  If TLS wanted to refrain Rodríguez from competing, it needed to do so following the specific legal requirements set forth under Puerto Rico law. It did not. As such, TLS cannot use an all-inclusive "non-disclosure" and "confidentiality" clause to interpret it as an enjoinment for Defendants to practice in the tax/financial industry.

On the other hand, TLS' request for preliminary injunction is a mere reaction to its recent knowledge that Rodríguez filed a complaint against it with the IRS, supported by the files in TLS' Dropbox folders.   But, TLS cannot refrain Rodríguez from complying with the law and from

denouncing every single illegal act he is aware of. Indirectly, TLS is asking this Honorable Court's assistance in protecting TLS against all pending investigations against it. But, this serves no purpose. The information was already sent. The investigation is under course. And, we truly believe the Court will not serve as a tool for TLS to cover up its illegal acts. At the bottom of this all, TLS is simply requesting the Court to abolish *sub silentio* the protection of the Whistleblower Act so that the IRS stops the investigation against it. There is no precedent for such a request.

For all of the above stated reasons, TLS' request for injunctive relief against Defendants should be **denied**.

**WHEREFORE**, Rodríguez respectfully requests the Court to deny TLS' request for preliminary injunction at dkts. 130 and 134.

**RESPECTFULLY SUBMITTED**, this 30th day of August, 2016.

### CERTIFICATE OF SERVICE

This document has been electronically filed, with copies to all counsel of record.

S/ LYDIA M. RAMOS CRUZ
LYDIA M. RAMOS CRUZ
USDC/PR 214104
1509 López Landrón
American Airlines Bldg, PH
San Juan, Puerto Rico 00911
Tel: (787) 508-2525
E-mail: lramos@carlolaw.com