**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| TLS MANAGEMENT AND MARKETING SERVICES, LLC<br><br>    Plaintiff<br><br>        v.<br><br>RICKY RODRIGUEZ TOLEDO; LORRAINE RAMOS, et als.<br><br>    Defendants | CIVIL NO. 15-2121 (BJM)<br><br>PRELIMINARY AND PERMANENT INJUNCTION; STORED COMMUNICATIONS ACT; WIRETAP ACT; COMMERCIAL SECRETS ACT; BREACH OF CONTRACT; CONVERSION; AND TORTIOUS INTERFERENCE |

**SURREPLY REGARDING MOTION IN LIMINE TO**
**EXCLUDE WHISTLEBLOWER EVIDENCE**

**TO THE HONORABLE COURT:**

COME NOW Ricky Rodríguez, Accounting Solutions Group, Global Outsourcing Services, and Lorraine Ramos (collectively referred to as "Defendants"), through the undersigned attorney, and very respectfully allege and pray as follows:

1.      TLS continues attempting to confuse the Court to preclude it from hearing what TLS needs to hide.  In the answer to the complaint, Rodríguez[1] raised as an affirmative defense that he "made a legitimate use of the documents stored in his Dropbox user account at TLS: to file a complaint against TLS under the Whistleblower Act of the Internal Revenue Service".  See, dkt. 466-1 at ¶2.  However, TLS proposes that this affirmative defense should not be allowed because it was already established that the remaining Defendants used TLS' Confidential Information for their personal gain.  That is a *non-sequitur*.  Rodríguez is a different person from ASG and GOS.

---

[1] As TLS points out, remaining Defendants ASG, GOS and Ramos have not raised such affirmative defense.  But, as discussed ahead, the point is irrelevant because they have never used any information from the USB drive that was submitted to the IRS.

2.      Also, TLS has announced as evidence the contents of the "Confidential Information" which Rodríguez copied in a USB drive and, later, submitted to the IRS.  Yet, TLS has never been able to make a showing that Defendants ASG, GOS and/or Ramos used the information in that USB for any purpose.  And, Rodríguez testified at large that he only used said USB to file the Whistleblower Complaint before the IRS.[2]  Since TLS wants to use the USB drive as evidence that Rodríguez breached his employment confidentiality clauses, his affirmative defense that he retained the USB documents for a legitimate purpose—that of submitting a Whistleblower claim before the agency—should be allowed.  Contrary to TLS' assertions, this is not a new affirmative defense.  Since the answer to the complaint, Rodríguez explained his use of TLS' "Confidential Information" was legitimate.  Reporting tax evasion clearly falls within legitimate activity to prevent fraud and criminal action.

3.      TLS further argues that no law, regulation or rule shields Defendants from liability in their sharing of information with the IRS.  TLS is wrong.  In 2006, Congress enacted the Tax Relief and Health Care Act of 2006, Public Law 109-432, that enables private individuals to report (1) underpayments of tax; and (2) persons otherwise guilty of violating the internal revenue laws. 26 U.S.C. 7623 *et seq*.  As per IRS Notice 2008-4, a Form 211 must be filed with the IRS. Such form needs to be accompanied, among others, with documentation to substantiate the claim. Following the IRS guidelines, Rodríguez submitted a Form 211, in which he disclosed "In terms of the supporting information regarding the claims, I have the following…. have everything in electronic format and will make it available as requested".  See, Exhibit 1, p. 3.  When the IRS deemed appropriate, it requested Rodríguez to submit said evidence. Rodríguez did so, at the

---

[2] The use by ASG of TLS' template draft for an Operating Agreement and GOS' use of a loan application freely downloaded by Rodríguez from the internet are unrelated to the USB. As per the unauthenticated Dropbox log submitted by TLS, Defendants ASG and GOS obtained such documents in September 2014.  See, dkt. 134-2, p. 397, l. 25393 and 25398.  At that date, Rodríguez had not even copied the contents of his user account at TLS' Dropbox to any kind of digital device.  See, dkt. 299-6 at p. 130, l. 9-24. As such, it is clear that ASG and GOS did not copy any information from a non-existing USB drive.

request of the IRS.  See, Exhibit 2 ("As requested, I have included the Lexar 64 USG Drive that contains all the information regarding the aforementioned cases"). Certainly, this is a legitimate use of TLS' "Confidential Information".  See, also, the Internal Revenue Manuals, Part 25, §25.2 defining "Whistleblower Claim file" to include "Form 211 filed by the whistleblower and any and all information supplied by the whistleblower either as part of the original submission or obtained during any further contacts with the whistleblower, including electronic media".

4.      TLS further insists that *Erhart v. BofI Holding, Inc.*, 2017 WL 588390 (S.D. Cal. Feb. 14, 2017), holds that a confidentiality agreement is superior to public policy in denouncing illegal activity.  But, it should be noted that *Erhart* did not analyze any Whistleblower provisions under the IRS Whistleblower program.  Furthermore, contrary to TLS' assertions, in *Erhart* the court found that Erhart's alleged communications to the government would be protected under whistleblower laws and that this would trump BofI's breach of contract claim.  A similar result was achieved in *Vannoy v. Celanese Corp.*, 2008-SOX-00064, ARB No. 09-118, 2011 WL 4690624 (ARB Sept. 28, 2011), where the complainant took personnel information from his employer's files as evidentiary support for a tip he had filed with the IRS Whistleblower program.  The ARB found that because Vannoy was sharing information with the IRS which he believed revealed violations of tax laws (and also SOX) and because Vannoy reported the alleged misconduct to individuals who had the authority to investigate the misconduct, he engaged in protected activity.

5.      Realizing that the USB which it wants to use as evidence is inextricably intertwined with the whistleblower defense and the letter submitted at dkt. 458-1 (Exhibit 2 herein), TLS objects it as tardy. But, Rodríguez was under no duty to provide documents to which he had no access. Additionally, Federal Rule of Civil Procedure 15(b) provides:

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the

> presentation of the merits of the action will be subserved thereby
> and the objecting party fails to satisfy the court that the admission
> of such evidence would prejudice the party in maintaining the party's
> action or defense upon the merits. Fed.R.Civ.P. 15(b).

*See also Hardin v. Manito-woc-Forsythe Corp.,* 691 F.2d 449, 457 (10th Cir.1982) ("Even where there is no consent, and objection is made at trial that evidence is outside the scope of the pretrial order, amendment may still be allowed unless the objecting party satisfies the court that he would be prejudiced by the amendment.").  In this case, TLS has been aware of the whistleblower affirmative defense since the answer to the complaint.  The piece of evidence at issue does not cause any prejudice to TLS.  Rather, it confirms Defendants' affirmative defense and it completes Defendants' document "G" at the pre-trial report.  See, dkt. 419, p. 90 (G: Certified Mail receipts to the IRS and Whistleblower Office. Re: copy of TLS' documents copied in the Western Digital external drive).  At the time the pretrial was submitted, Defendants were able to announce the documents to which they had access.  Now that Defendants have also had access to the letter sent by certified mail to the IRS, an amendment to the pre-trial report should be allowed to include this piece of evidence.

6.    TLS further argues that the letter at issue shows that his whistleblower defense is a pretext.  Certainly, TLS may wish to attack the credibility of Rodríguez' affirmative defense.  But, a motion *in limine* is not the vehicle to conduct credibility attacks on affirmative defenses.  Whether Rodríguez' whistleblower affirmative defense is a pretext or not is for the Court to decide, after listening to Rodríguez' testimony. It should be noted, however, that TLS has failed to subpoena the IRS to show that the whistleblower complaint is a "pretext".  TLS has not produced, either, any letter from the IRS closing the claim.  And, of course, it may not do so because such letter does not exist.  And, the reason why it does not exist is because the investigation is very much alive, as it escalated to the Criminal Division of the IRS.  See, dkt. 299-26 at p. 7, l. 10-p. 8, l. 9.  That is the real reason why TLS wants this affirmative defense excluded.

7.      TLS further claims *sub silentio* that documents reflecting criminal activity and/or illicit conduct qualify as trade secrets under the Puerto Rico Commercial and Industrial Secrets Protection Act if they encompass a process or method.  Yet, TLS has failed to cite where in the Act, a "Trade Secret" is defined to include illegal methods or illegal processes.  It also fails to cite any rule establishing that a final guilty judgment needs to be entered in order for the Court to consider whether an alleged "Trade Secret" is actually so.  During trial, Defendants will be able to testify as this, so the Court can determine whether the secrecy of TLS' "processes" are based on a "Trade Secret" or in the fact that the processes at issue are not completely legitimate. Once the Court hears this testimony, it will be able to conclude whether the "Trade Secret" privilege under Puerto Rico Rule of Evidence 513 is applicable.

8.      TLS further presses the Court to impose sanctions against Defendants and counsel for breaching the Court order at dkt 294 ("counsel for all parties in this case are admonished that they may be subject to monetary sanctions and/or referral for disciplinary proceedings in the event that pleadings they sign are found to contain irrelevant, unsubstantiated, harassing, and/or defamatory allegations").  Yet, Defendants are not in breach of the Court order. TLS chose to challenge Defendants' Whistleblower complaint and moved to exclude said evidence.  Defendants are, therefore, entitled to defend their position on said matter.  Furthermore, Defendants' allegations in support of the Whistleblower complaint are relevant, substantiated, true, and brought up as an affirmative defense to TLS' improper and unfounded allegations that the USB at issue was used by Defendants to access TLS' "Confidential Information".  TLS' reading of the Court order to impair Defendants' freedom of speech and limit their ability to defend themselves in the instant litigation is, simply, erroneous.

9.      Finally, TLS argues that Rodríguez has no personal knowledge of the IRS investigation because he is not "carrying [it] out".  But, Defendants do not need to be carrying out the investigation to have personal knowledge of the events in which they have participated.

Furthermore, it is incorrect that Defendants refused to answer questions about the meetings with the IRS.  In fact, Defendants provided 80 emails and were submitted to hours of questioning during their deposition regarding their participation in the investigation by the IRS.  See, dkt. 299-26, p. 1-68.  Certainly, Defendants will not be testifying about the one question they declined to answer in the deposition.  But, it should also be noted that TLS could seek a Court order if it thought it had any entitlement to such information.  It did not.

**WHEREFORE**, Defendants respectfully request the Court to deny TLS' motion *in limine* to exclude Whistleblower evidence and testimony at trial.

**RESPECTFULLY SUBMITTED**, this 15th day of August, 2018.

**CERTIFICATE OF SERVICE**

This document has been electronically filed, with copies to all counsel of record.

S/ LYDIA M. RAMOS CRUZ
LYDIA M. RAMOS CRUZ
USDC/PR 214104
1509 López Landrón
American Airlines Bldg, PH
San Juan, Puerto Rico 00911
Tel: (787) 508-2525
E-mail:  lramos@rccrlegal.com