# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **TLS MANAGEMENT AND MARKETING SERVICES LLC**,<br>    Plaintiff,<br><br>    v.<br><br>**RICKY RODRÍGUEZ-TOLEDO**, *et al.*,<br>    Defendants. | Civil No. 15–2121 (BJM) |

## ORDER

    TLS Management and Marketing Services LLC ("TLS") brought this action under the court's federal question and supplemental jurisdiction against Ricky Rodríguez-Toledo ("Rodríguez"), ASG Accounting Solutions Group, Inc. ("ASG"), and Global Outsourcing Services LLC ("GOS") (collectively "defendants"), among others. Dkt. 74. TLS alleged, inter alia, violations of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510–2522 ("the Wiretap Act"); violations of the Puerto Rico Commercial and Industrial Trade Secret Protection Act, P.R. Laws Ann. tit. 10, §§ 4131–4141 (the "Trade Secret Act"); and breach of contract, under Articles 1044, 1054, 1077 and 1206 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 2994, 3018, 3052, 3371. *Id.* After summary judgment practice and a five-day non-jury trial, TLS prevailed on claims for misappropriation of trade secrets and breach of a nondisclosure agreement. The First Circuit reversed, concluding that TLS failed to satisfy its burden to prove the existence of trade secrets and finding the nondisclosure agreement unenforceable. Dkt. 586 at 3. Judgment has been entered for defendants. Dkt. 588. Before the court is defendants' motion for attorney's fees, Dkt. 597, which TLS opposed, Dkt. 600. Defendants replied, Dkt. 604, and TLS submitted a surreply, Dkt. 611. The case is before me on consent of the parties. Dkt. 93. For the reasons that follow, defendants' motion for attorney's fees is **DENIED**.

## BACKGROUND

    TLS is a Puerto Rico tax planning and consulting firm that advises clients regarding how to minimize United States and Puerto Rico tax liabilities. Dkt. 586 at 3. Rodríguez is the founder

of ASG, a company that also offers tax planning services. *Id.* at 5. In March 2012, ASG entered a subcontractor agreement with TLS, and six months later, Rodríguez began working for TLS. *Id.* Both ASG and Rodríguez signed contracts with TLS containing similar nondisclosure provisions. *Id.*

As a TLS employee, Rodríguez had access to a TLS Dropbox account, where TLS stored various documents it deemed confidential. Dkt. 535 at 8-9. In September 2014, Rodríguez copied the complete contents of the TLS Dropbox account onto an external hard drive without authorization. *Id.* at 13. The copied information included templates for TLS forms, client loan applications and buy-sell agreements, lists of current and potential TLS clients, TLS contractors, valuation reports, a new insurance strategy, and two Capital Preservation Reports ("CPRs").[1] *Id.*

In January 2015, Rodríguez left his employment with TLS and began providing tax services—through ASG and GOS—in competition with TLS.[2] *Id.* He did not remove TLS's confidential information from his ASG laptop, disable its TLS Dropbox access, delete the files he copied in September 2014, or return the external hard drive containing those files. *Id.* Rodríguez used two of the TLS documents he copied: he modified a loan application for a GOS client, and he used the TLS operating agreement to structure GOS. *Id.* He also provided services to two of TLS's former clients. *Id.* at 14-15. Those clients sent Rodríguez all their documentation related to TLS's U.S. Possession Strategy ("the Strategy")—which TLS would claim as trade secret—and Rodríguez provided advice and analysis regarding that information. *Id.* at 15.

TLS brought suit in August 2015, claiming, inter alia, that defendants (1) violated the Wiretap Act by intercepting electronic communications from the TLS Dropbox account without authorization, (2) misappropriated TLS's trade secrets, and (3) breached their nondisclosure agreements with TLS. TLS's Wiretap Act and state law claims survived a motion to dismiss, Dkt. 173 at 17-18, and discovery ensued. During discovery, Rodríguez admitted that he had lost or destroyed certain electronic devices, and I granted in part TLS's motion for spoliation sanctions,

---

[1] TLS would eventually argue that the CPRs contained trade secrets.
[2] Rodríguez was the majority owner of both ASG and GOS. Dkt. 586 at 6.

thus permitting an adverse inference regarding the information stored on Rodríguez's ASG laptop. *See* Dkt. 212. As litigation progressed, I granted preliminary injunctive relief based on TLS's trade secret claims, Dkt. 215, and I granted TLS's motion for summary judgment as to portions of its breach of contract claim, Dkt. 383 at 21.

In April 2017, defendants emailed TLS an offer of judgment indicating that they would settle the case for $5,000, but TLS did not accept this offer. *See* Dkt. 591-1.

TLS's claims for violations of the Wiretap Act, breach of contract, and misappropriation of trade secrets survived to a five-day non-jury trial. As to the Wiretap Act claim, I gave little weight to the adverse inference permitted by spoliation sanctions and found that TLS did not otherwise show that defendants had intercepted any information from TLS's Dropbox account after Rodríguez left TLS. Dkt. 535 at 16-20. Accordingly, TLS's Wiretap Act claim failed. *Id.* Regarding TLS's  breach of contract claims, I found that defendants breached the confidentiality clauses in the contracts they entered with TLS by using TLS's loan agreement and operating agreement and that ASG and Rodríguez breached their contracts by using and disclosing the Strategy to clients and by keeping files after their employment with TLS ended. *Id.* at 33 (summarizing findings on summary judgment). Regarding misappropriation of trade secrets, TLS claimed as trade secrets both (1) the Strategy, which allowed TLS clients to lower their tax payments by outsourcing some business activities to TLS, and (2) a portion of TLS's CPRs, which provided client-specific tax recommendations based on an analysis of applicable statutes and regulations. *Id.* at 21; Dkt. 586 at 4-5. I found that both the Strategy and CPR contained trade secrets and determined that Rodríguez and ASG misappropriated those trade secrets by downloading two CPRs without authorization and providing certain advice to two former TLS clients. Dkt. 535 at 22-32. I ordered money damages and permanently enjoined defendants from using or retaining TLS's confidential information or trade secrets, including the CPR and Strategy. *Id.* at 40.

On January 9, 2019, defendants filed a notice of appeal to the First Circuit. Dkt. 567.

On May 29, 2019, TLS sent an ethics complaint to the Association of Certified Public Accountants of Puerto Rico ("the Association") regarding Rodríguez, who is a Certified Public

Accountant ("CPA"). *See* Dkt. 597-2. That complaint explained that the district court had found that Rodríguez had misappropriated TLS's trade secrets and violated a nondisclosure agreement and then argued that Rodríguez's conduct violated the Certified Public Accountants' Code of Ethics. Ultimately, it sought "all applicable sanctions." *Id.* at 17.

On July 21, 2020, the First Circuit handed down its decision, reversing the district decision as to TLS's breach of contract and trade secret claims. Dkt. 586. The First Circuit held unenforceable the nondisclosure agreement defendants had allegedly breached. Although the Puerto Rico Supreme Court had not directly addressed the question, the relevant nondisclosure provisions were unenforceable under Puerto Rico law because they implicated the same policy concerns as do noncompete clauses—some of which, per *Arthur Young & Co. v. Vega III*, 136 D.P.R. 157, 1994 P.R.-Eng. 909, 262, 136 D.P.R. 137 (P.R. 1994), are unenforceable. Dkt. 586 at 30-31. As to the trade secret claims, the First Circuit held that TLS failed to show that its CPR contained trade secrets, as it had failed to separate the purported trade secrets from other generally known information. Dkt. 586 at 16-17. Similarly, TLS had an obligation to show that the Strategy was not publicly known and not readily ascertainable from public sources. *Id.* at 20. But on this front, it fell short and thus had not shown that the Strategy contained trade secrets. *Id.*

Given that all of TLS's claims failed after appeal, judgment was entered for defendants. Dkt. 588. Defendants now seek attorney's fees.

## DISCUSSION

Defendants argue that they are entitled to attorney's fees because (1) public policy concerns regarding labor and employment disputes favor awarding attorney's fees here; (2) Rodríguez's nondisclosure agreement with TLS provides for attorney's fees; (3) Rule 35.1 of the Puerto Rico Rules of Civil Procedure would grant them attorney's fees; and (4) TLS's claims were both frivolous and brought in bad faith.[3] I will address each argument in turn.

---

[3] Defendants have not sufficiently raised any argument for attorney's fees pursuant to Rule 44.1 of the Puerto Rico Rules of Civil Procedure by making passing reference to that rule in a footnote in their

Under the "American Rule," "the prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Socy.*, 421 U.S. 240, 247 (1975). However, a court may award attorney's fees pursuant to statutory authority, *Buckhannon Bd. and Care Home, Inc. v. W. Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 602 (2001); contractual obligation, *Summit Valley Industries Inc. v. Loc. 112, United Broth. of Carpenters and Joiners of Am.*, 456 U.S. 717, 721 (1982); or where the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Alyeska Pipeline*, 421 U.S. at 258-59 (citations and internal quotation marks omitted).

Defendants first contend that they are entitled to attorney's fees based on Puerto Rico public policy regarding labor disputes. According to defendants, because Rodríguez was once employed by TLS, policy concerns now compel TLS to pay his attorney's fees. In support of this argument, defendants cite two statutes, P.R. Laws Ann. tit. 29, § 146 *et seq.* and P.R. Laws Ann. tit. 32, § 3114.[4]

At the outset, I note that defendants' citation to P.R. Laws Ann. tit. 29, § 146 is inapposite, as TLS' claims against defendants for Wiretap Act violations, misappropriation of trade secrets, and breach of contract had nothing to do with employment discrimination. *See* P.R. Laws Ann. tit. 29, § 146 (prohibiting an employer from discharging, laying off, or discriminating against an employee based on one or more of several protected categories). But defendants' claim for attorney's fees pursuant to P.R. Laws Ann. tit. 32, § 3114 merits further discussion.

---

reply brief. Dkt. 604 at n.1. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir. 1988) (a party has a duty "to spell out its arguments squarely and distinctly ... [instead of being] allowed to defeat the system by seeding the record with mysterious references to unpled claims"); *NExTT Sols., LLC v. XOS Techs., Inc.*, 113 F. Supp. 3d 450, 458 (D. Mass. 2015) (explaining that legal arguments "raised for the first time in a reply brief" may be "considered waived for the purpose of" the motion at issue).

[4] Defendants also cite to three decisions of the Puerto Rico Supreme Court. Dkt. 597 at 1-2. Only one of these, *Belk Arce v. Martinez*, 63 PR Offic. Trans. 18, 163 D.P.R. 196 (P.R. 2004), is available to the court in English, and defendants have not provided certified translations of the other two cases, as required by local rule. *See* D.P.R. Civ. R. 5(g). Consequently, these two cases may not be used to support defendants' argument with respect to public policy. *Lopez–Gonzalez v. Municipality of Comerio*, 404 F.3d 548, 553 n. 4 (1st Cir. 2005).

Under Puerto Rico law, attorneys who represent "workers or employees who need to file claims against their employers under federal or local labor legislation or under an individual or collective work contract" may not collect their fees from their clients. P.R. Laws Ann. tit. 32, § 3114; *see also id.* § 3116 (declaring void "[a]ll contracts, covenants, or agreements in which workers or employees agree directly or indirectly to pay fees to their attorneys in judicial or extrajudicial cases of claims against their employers under the labor legislation of Puerto Rico, or under labor legislation of the United States Congress applicable to Puerto Rico or under an individual or collective work contract"). This is true because such a practice would be "equivalent to permitting the worth of [the employee's] hire to be reduced by the amount they pay their attorneys," and "the policy of the Government of Puerto Rico is to safeguard workers and employees against such reductions in the worth of their hire." *Id.* § 3114. In support of this policy, Puerto Rico law requires employers to pay attorney's fees under the following circumstances:

> In every case filed in the courts of Puerto Rico by a worker or an employee in which any right or sum of money is claimed against his employer under federal or local labor legislation or an individual or collective work contract and in which the claim is granted in whole or in part, the attorney's fees shall be levied on the employer if the attorney is not one of the attorneys of the Department of Labor and Human Resources.

*Id.* § 3115. Under this statute, employers must pay attorney's fees on behalf of "employees who prevail in their claim against them," including those who bring claims of employment discrimination. *Belk Arce*, 63 PR Offic. Trans. 18 at 5. This statute applies when the following conditions are met: (1) an employee makes a claim against his employer; (2) the claim arises under federal or local labor laws or a work contract; (3) the "employer" is in fact an employer under the law; and (4) the claim is granted in whole or in part. P.R. Laws Ann. tit. 32, § 3115.

I am not persuaded that defendants are due attorney's fees under this statute or based on the policy concerns underlying it. Rodríguez did not make a claim against his employer. Rather, his former employer filed suit against him several months after he left his employment. Further, the claims did not arise under labor laws. Rather, they arose under the Wiretap Act and Puerto Rico law governing breach of contract and misappropriation of trade secrets. And although a work-

related contract was involved in the litigation, no claim was ever granted in whole or in part against TLS, Rodríguez's former employer.

      Defendants correctly point out that public policy supports preventing workers from having the value of their hire reduced by the costs of attorney's fees incurred when they must take legal action against their employers. However, they have provided no authority suggesting that this policy extends to situations where an employer raises colorable claims against a former employee.[5] And although defendants correctly explain that public policy concerns have "been widely applied in unjust dismissal and discrimination cases," Dkt. 597 at 1-2, the instant litigation raised no such dispute. Defendants claim for attorney's fees based on the public policy concerns underlying labor and employment litigation is thus denied.

      Next, defendants argue that they are entitled to attorney's fees pursuant to a provision in the confidentiality and nondisclosure agreement between TLS and Rodríguez. The relevant provision follows:

> *Equitable Remedies*. The ("Parties") recognize and acknowledge that irreparable damage without an adequate remedy at law may result from a breach of this Agreement, including without limitation any actual or threatened use of Confidential Information in any manner that is not in accordance with this Agreement. Each Party agrees that, in addition to any and all other remedies available, one Party may apply for and be entitled to a restraining order, injunction, decree of specific performance, or other equitable relief as may be decreed or issued by a court of competent jurisdiction to enforce the provisions of this Agreement and to restrain the other Party from such breach. Either Party, if forced to seek equitable remedies, may obtain such relief without the necessity of posting a bond. Each Party agrees to pay all legal fees and costs of the other Party if a preliminary or permanent injunction is ordered due to the actions or inactions of the other Party.

Dkt. 299-16 at 2. Defendants argue that this provision is ambiguous regarding when a party to the contract must pay attorney's fees and that, because the contract is one of adhesion drafted by TLS, any ambiguity must be construed against TLS. According to defendants, if this provision is so

---

[5] As discussed below, TLS's claims, although ultimately unavailing, had some reasonable basis in law and fact.

construed, then TLS must pay its attorney's fees. I disagree. I find that the provision is clear and that it requires paying attorney's fees only under circumstances not applicable here.[6]

"Article 1233 determines the manner in which courts should interpret contracts under dispute as to the meaning of their terms. The Article is strict in its mandate that courts should enforce the literal sense of a written contract, unless the words are somehow contrary to the intent of the parties." *Hopgood v. Merrill Lynch*, 839 F. Supp. 98, 104 (D.P.R. 1993). "'If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed.'" *IOM Corp. v. Brown-Forman Corp*., 553 F. Supp. 2d 58, 63 (D.P.R. 2007) (quoting P.R. Laws Ann. tit. 31, § 3471). "An agreement is clear when it can 'be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation.'" *In re Advanced Cellular Sys., Inc.*, 483 F.3d 7, 12 (1st Cir. 2007) (quoting *Catullo v. Metzner*, 834 F.2d 1075, 1079 (1st Cir. 1987)). Additionally, provisions of a contract "should be interpreted in relation to one another, giving to those that are doubtful the meaning which may appear from the consideration of all of them together," P.R. Laws Ann. tit. 31, § 3475, and a contract must not be distorted "to reach absurd or unfair results." *Irizarry v. García*, —— P.R. Offic. Trans. ——, 155 D.P.R. 713, 726, 2001 WL 1555664 (P.R. Nov. 27, 2001).

The contract at issue here is a "Confidentiality and Non-Disclosure Agreement." Dkt. 299-16 at 1. It contains two main clauses—one discussing "Confidentiality" and one discussing "General Provisions"—each of which has several subclauses. *Id.* at 1-3. The provision at issue here is the first subclause under the heading "General Provisions." *Id.* at 2. By its clear language, it applies to circumstances where there is a breach of contract and a party must seek equitable remedies. It acknowledges that a breach may cause irreparable damage, entitling the non-breaching party to an injunction "to enforce the provisions of this Agreement and to restrain the other Party from such breach." *Id.* at 2. Where "a preliminary or permanent injunction is ordered due to the

---

[6] In its decision, the First Circuit held unenforceable the nondisclosure provision in this agreement without deciding whether the remainder of the agreement survived. Dkt. 586 at 31-32. Here, I assume without deciding that the other provisions of the contract survive, as the contract does not require awarding attorney's fees in any event.

actions or inactions" of a party, that party "agrees to pay all legal fees and costs." *Id.* In other words, the contract requires a breaching party to pay attorney's fees when a non-breaching party must obtain an injunction because of the breach.

Given the clear meaning of the contract, its attorney's fees provision is simply inapplicable to the facts of this case. TLS sought and obtained an injunction based on defendants' alleged breach. The injunction that issued was based on defendants' "actions or inactions," not conduct by TLS. And ultimately, TLS's breach of contract claims failed. Had this been a case where TLS breached the agreement and defendants were forced to obtain an injunction, then the contract provision they cite would entitle them to attorney's fees. But the agreement simply does not provide attorney's fees to the party accused of breach who ultimately prevails.

Defendants are correct that ambiguities in an adhesion contract[7] should be construed in favor of the weaker party. *Casanova v. Puerto Rico American Insurance Co.*, 6 P.R. Offic. Trans. 960, 106 D.P.R. 689, 696 (P.R. 1978). However, where there is no ambiguity, the clear terms of the contract are enforced. *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 19 (1st Cir. 2009). Here, even assuming the contract is one of adhesion, the clear terms of the contract, read in its entirety, only provide for attorney's fees under certain circumstances, which are absent in the instant litigation. Indeed, defendants themselves admit that "[t]he clause at issue clearly states that if a party seeks an injunction and wins, that party will be entitled to costs and attorneys' fees." Dkt. 597 at 3. They nonetheless ask that I find ambiguity where there is none so as to impose attorney's fees under entirely different circumstances. To grant defendants' motion for attorney's fees based on the parties' nondisclosure agreement would require inserting a new clause into that agreement. This I decline to do. *See Rochester Capital Leasing Corp. v. Williams Int'l Ltd.*, 3 P.R. Offic. Trans. 226, 103 D.P.R. 163, 167 (P.R. 1974) ("The fact that a contract is a contract of adhesion, even if that were the case here, means only that it shall be analyzed in the manner most favorable to the

---

[7] "In an adhesion contract one party sets the terms of the contract which the other party accepts." *Quinones Lopez v. Manzano Pozas*, —— P.R. Offic. Trans. ——, 141 D.P.R. 139, 155 n.17, 1996 WL 499244 (P.R. June 25, 1996) (citation omitted).

weaker party, but not that it shall be construed in an unreasonable manner.") (internal citation omitted).

Next, defendants contend that they are entitled to attorneys' fees pursuant to Puerto Rico's offer of judgment provision, Rule 35.1 of the Puerto Rico Rules of Civil Procedure, P.R. Laws Ann. tit. 32, App. III, Rule 35.1 ("Rule 35.1"). Rule 35.1 is a pre-trial settlement tool. *H.U.C.E. de Ame. v. V. & E. Eng. Const.*, 15 P.R. Offic. Trans. 937, 115 D.P.R. 711, 716 (1984). It allows defendants to serve an offer of judgment on a plaintiff, who may accept or reject that offer, but with a potential penalty attached. *Ramallo Bros. Printing, Inc., v. Federal Exp. Corp.*, 129 D.P.R. 499, 509, 1991 P.R.-Eng. 735851 (1991). The offer must "allow judgment to be taken against [the defendant] for the money or property or to the effect specified in [the defendant's] offer, with the costs accrued up to that time." P.R. Laws Ann. tit. 32, App. III, Rule 35.1. If the offeree rejects the offer and "the judgment finally obtained by the offeree is not more favorable than the offer, [then] the offeree must pay the costs, expenses and attorney's fees incurred by the [offeror] after the making of the offer." *Id.* This rule aims to foster pre-trial settlement by providing the defendant an opportunity for settlement "in cases where there is a high probability that the plaintiff will prevail, and by imposing a penalty on the plaintiff [] who rejects a formal settlement offer, insists on pursuing litigation[,] and obtains a relief through judgment that is less favorable than the offer tendered." *Ramallo Bros.*, 129 D.P.R. at 509. This rule does not apply to offers that are "'not realistic, reasonable, or the product of good faith.'" *Id.* (quoting *H.U.C.E.*, 115 D.P.R. at 716). And the court retains some discretion when considering a claim for attorney's fees under Rule 35.1. *Ganapolsky v. Keltron Corp.*, 823 F.2d 700, 702 (1st Cir. 1987).

Here, defendants argue that they are entitled to attorney's fees under Rule 35.1 because they offered to have a judgment issued against them, but TLS failed to accept that offer. Although defendants did not submit the relevant offer alongside their motion for attorneys' fees, I gather they refer to a document submitted with their motion for costs at Dkt. 591-1. That document is an email addressed to counsel for TLS, which reads as follows:

> Defendants hereby make an offer of judgment pursuant to Fed. R. Civ. P. 68 in the amount of $5,000.00, including costs. Please, advise within the next fourteen (14) days if TLS accepts the herein stated offer of judgment.

Dkt. 591-1. TLS rejected this offer, the parties went to trial, and, after appeal to the First Circuit, defendants won a judgment in their favor. Thus, according to defendants, they are now entitled to Rule 35.1 attorney's fees.

The central problem with defendants' argument is that they did not make TLS an offer of judgment pursuant to Rule 35.1. Rather, they made an offer pursuant to Federal Rule of Civil Procedure 68 ("Rule 68").[8] That rule is similar, but not identical to, Rule 35.1. *See Ganapolsky v. Keltron Corp.*, 823 F.2d 700, 701–02 (1st Cir. 1987). For instance, "Rule 68 applies only when a plaintiff/offeree obtains an award that is less than the offer of judgment, and not when the plaintiff/offeree loses the suit in its entirety." *Gil de Rebollo v. Miami Heat Associations, Inc.*, 137 F.3d 56, 66 (1st Cir. 1998). Conversely, Rule 35.1 applies both to situations where the offeree obtains a judgment that is less favorable than the offer *and* where the offeree loses the case

---

[8] Rule 68 provides as follows:

(a) Making an Offer; Judgment on an Accepted Offer. At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

(b) Unaccepted Offer. An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.

(c) Offer After Liability is Determined. When one party's liability to another has been determined but the extent of liability remains to be determined by further proceedings, the party held liable may make an offer of judgment. It must be served within a reasonable time--but at least 14 days--before the date set for a hearing to determine the extent of liability.

(d) Paying Costs After an Unaccepted Offer. If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

Fed. R. Civ. P. 68.

entirely.[9] *Ganapolsky*, 823 F.2d at 701–02 (citing *H.U.C.E.*, 115 D.P.R. 711). Further, Rule 35.1

imposes the following formal requirements on an offer of judgment:

> (1) [The offer] [s]hall be in writing and served to the party for which it is intended through certified mail.
> (2) It shall specify who is making the offer and to whom it is directed.
> (3) It shall establish the amount, if any, offered for damages.
> (4) It shall specify the total amount of property and conditions offered.
> (5) It shall establish the amount for costs accrued up to that time.

P.R. Laws Ann. tit. 32, App. III, Rule 35.1. Rule 68 does not impose such specific formal

requirements. Finally, Rule 35.1 and Rule 68 impose different penalties on the offeree who obtains

a judgment less favorable than that offered. A Rule 68 offeree who wrongly rejects an offer must

pay the "costs" incurred by the offeror after the offer was made. Fed. R. Civ. P. 68(d). Generally,

attorney's fees are not included as costs. *Gil de Rebollo*, 137 F.3d at 66. Rather, this occurs only

where "the underlying substantive law defines attorney's fees as a part of costs." *Id.* In contrast, a

Rule 35.1 offeree who wrongly rejects an offer must pay not only costs incurred post-offer, but

also attorney's fees. *Id.* at 65-66.

Without doubt, the offer of judgment defendants sent TLS was made pursuant to Rule 68

and not pursuant to Rule 35.1. The offer expressly states that it was made "pursuant to Fed. R. Civ.

P. 68" without reference to Rule 35.1; it was sent by email and not by certified mail; and the offer

fails to establish the amount of costs accrued up to the time of the making of the offer, as required

by Rule 35.1.[10] Nonetheless, defendants maintain that, at the time they sent their offer, they were

---

[9] Accordingly, I agree with parties that Rule 68 does not apply to the present dispute, as judgment has been entered for defendants. *See* Dkt. 600 at 11 n. 3; Dkt. 604 at 9. *See also Rafael Refojos & Associates, Inc. v. Ideal Automotive and Truck Accessories, Inc.*, CV 03-1797 (DRD), 2008 WL 11495171, at *3 (D.P.R. June 16, 2008) (where Rule 68 was inapplicable because judgment had been entered for defendant, there was no conflict between Rule 68 and Rule 35.1 and thus no need to resort to Rule 68 under the *Erie* doctrine).

[10] Defendants represent that the reason their offer of judgment did not specify the costs accrued up to that point is that none had accrued so far. Dkt. 604 at 8. This case was filed on August 17, 2015, Dkt. 1, and defendants' offer of judgment is dated April 4, 2017, Dkt. 591-1. Discovery would close roughly three weeks later. Dkt. 117. That defendants had not incurred any costs almost two years into the litigation is remarkable if not incredible. Regardless, Rule 35.1 requires that offers of judgment "establish the amount for costs accrued up to" the time of making the offer. P.R. Laws Ann. tit. 32, App. III, Rule 35.1. If defendants had accrued no costs, Rule 35.1 nonetheless requires that they specify as such.

under no duty to comply with the formal requirements of Rule 35.1 because the court retained federal question jurisdiction over one claim and supplemental jurisdiction over the remaining Puerto Rico law claims. But they fail to support this novel argument with relevant legal authority.

As the Supreme Court of Puerto Rico has explained, Rule 35.1 "sets down the form and manner—the terms and procedures—in which a defending party may serve an offer of judgment." *Ramallo Bros.*, 129 D.P.R. at 508. Defendants have offered no convincing reason why those terms and procedures can be ignored, and, given the differences between Rule 68 and Rule 35.1 described above, I cannot say that these two rules are simply interchangeable. To the contrary, the distinction between the two rules is significant. *H.U.C.E.*, 115 D.P.R. at 714-15 (discussing differences between Rule 35.1 and Rule 68 and explaining that U.S. Supreme Court cases construing Rule 68 "have only persuasive value in this jurisdiction"). Indeed, because the Rule 35.1 offeree must pay both costs and attorney's fees, rejecting such an offer generally carries a higher risk than does rejecting a Rule 68 offer. Likewise, because the Rule 35.1 offeree must pay costs and fees both (1) where she receives a judgment less favorable than the offer and (2) where she loses her case entirely, there are more circumstances under which she must pay a penalty pursuant to Rule 35.1 than there are if she only receives a Rule 68 offer. In short, the Rule 68 offeree faces a different calculus when deciding whether to settle a case than does the Rule 35.1 offeree, and it is thus important that the offeror and offeree distinguish between the two kinds of offers.

Here, however, defendants did not distinguish between the two kinds of offers. Rather, they served an offer of judgment pursuant to Rule 68 without reference to Rule 35.1. TLS thus only ever engaged in the calculus involved in deciding whether to settle in light of Rule 68's penalty. It cannot now, therefore, be subject to a Rule 35.1 penalty. Accordingly, defendants' motion for Rule 35.1 attorney's fees is denied.

Next, defendants maintain that they are entitled to attorney's fees because TLS raised frivolous claims and acted with bad faith throughout the litigation. A court may award attorney's fees where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Alyeska Pipeline*, 421 U.S. at 258-59 (citations and internal quotation marks omitted). "[T]he term

'vexatious' means that the losing party's actions were 'frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Local 285 v. Nonotuck Resource Associates, Inc.*, 64 F.3d 735, 737 (1st Cir. 1995) (citations omitted). A court may also award sanctions where it "finds that fraud has been practiced upon it, or that the very temple of justice has been defiled." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (internal quotation marks and citation omitted). Such sanctions reach "a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Id.* (internal quotation marks and citation omitted). Where the court relies on its inherent power to shift attorney's fees, said power "should be used sparingly and reserved for egregious circumstances." *F.A.C., Inc. v. Cooperativa De Seguros De Vida De Puerto Rico*, 563 F.3d 1, 6 (1st Cir. 2009) (internal quotation marks and citations omitted).

Defendants contend that TLS brought "frivolous litigation as a tool to crush potential legitimate competition." *See* Dkt. 597 at 5. According to defendants, TLS manufactured federal question jurisdiction by bringing Wiretap Act claims that had no factual basis and that would ultimately fail. But this argument misunderstands the court's federal question jurisdiction.

"[A] court has jurisdiction to decide a case so long as the plaintiff has alleged a colorable federal claim." *Lawless v. Steward Health Care System, LLC*, 894 F.3d 9, 18 (1st Cir. 2018) (citations omitted). "A claim is colorable if it is seemingly valid or genuine, as opposed to wholly insubstantial, immaterial, or frivolous." *Id.* (internal citations and quotation marks omitted). Thus, a court may exercise federal question jurisdiction over a colorable federal claim even though the claim ultimately fails. *Id.* (citing *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 89 (1998)); *see also Aldinger v. Howard*, 427 U.S. 1, 7 (1976) (quoting *Siler v. Louisville & Nashville R. Co.*, 213 U.S. 175, 191 (1909)) ("[W]here federal jurisdiction is properly based on a colorable federal claim, the court has the 'right to decide all the questions in the case, even though it decided the Federal questions adversely to the party raising them, or even if it omitted to decide them at all, but decided the case on local or state questions only.'").

Here, federal question jurisdiction was based on defendants' alleged violation of the Wiretap Act, which "provides a private right of action against one who 'intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication.'" *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003) (quoting 18 U.S.C. § 2511(1)(a) and citing 18 U.S.C. § 2520). To establish a Wiretap Act claim, a plaintiff must show "that a defendant (1) intentionally (2) intercepted, endeavored to intercept, or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device." *See id.* TLS alleged that defendants intentionally intercepted TLS's confidential electronically stored information when they accessed a TLS Dropbox without authorization through Rodríguez's ASG laptop computer. These allegations sufficiently alleged a colorable claim under the Wiretap Act. That TLS failed to show a violation by a preponderance of evidence does not mean its Wiretap Act claim was frivolous. To the contrary, TLS's claims had some factual basis: Rodríguez admitted to copying the entire TLS Dropbox account and conceded that the ASG laptop retained access to the TLS Dropbox account after his resignation. Dkt. 535 at 19, 22. TLS's claim failed because it offered insufficient evidence regarding defendants' "interception" of an electronic communication, which is a highly technical question. *See* Dkt. 535 at 17-19 (discussing *Boudreau v. Lussier*, No. 16-1049, 2018 U.S. App. Lexis 23283, at *29 (1st Cir. Aug 21, 2018)). It did not fail because the claim lacked any reasonable basis in law or fact, and I find no indication that "the very temple of justice has been defiled" because TLS raised Wiretap Act claims against defendants. *Chambers*, 501 U.S. at 46. "The line between frivolous arguments and merely unpersuasive ones is fine, and while [TLS] was ultimately unsuccessful, its contention ... was 'at least colorable.'" *N. New Eng. Tel. Operations LLC v. Local 2327, IBEW*, 735 F.3d 15, 25 (1st Cir. 2013) (quoting *Local 2322, Int'l Bhd. of Elec. Workers v. Verizon New England, Inc.*, 464 F.3d 93, 100 (1st Cir. 2006)).

Defendants also argue that TLS's Wiretap Act claim should have been dismissed earlier but that it avoided dismissal only because "TLS fooled the Court into believing a false spoliation story just to force a federal jurisdiction that never existed." Dkt. 597 at 6. This is incorrect. Rodríguez

admitted that he discarded a laptop and deleted the contents of an external hard drive, and I found that the electronic information stored thereon was "willfully discarded or deleted." Dkt. 212 at 2, 5. I did not disturb that finding in my decision after trial, Dkt. 536 at 19; the First Circuit did not revisit it, Dkt. 586; and defendants provide no reason to revisit that finding now. Defendants' assertion that TLS made false spoliation allegations is entirely unsupported and thus provides no basis for finding that TLS's federal claims were frivolous or brought in bad faith.

Defendants also contend that the instant litigation was frivolous, vexatious, and brought in bad faith because TLS's true goal was to eliminate competition, destroy Rodríguez professionally, and deprive him of his right to earn a living.[11] According to defendants, "TLS set the plan in action by first seeking an injunction order against [Rodríguez] and then, trying to have the [Association] of Certified Public Accountants of Puerto Rico disbar him." Dkt. 597 at 7. As evidence of this plot, defendants point me to TLS's complaint. That complaint raised several claims against defendants based on allegations that Rodríguez downloaded a complete copy of TLS's Dropbox account without authorization—including information TLS had deemed confidential—and then used that information for defendants' benefit. Dkt. 74 ¶¶ 2, 58-59, 67-71, 76-77, 128-36, 140-48. It further alleged that Rodríguez and ASG had signed nondisclosure agreements but nonetheless disclosed information subject to those agreements. *Id.* ¶¶ 157-61. These allegations supported causes of action for breach of contract, violations of the Wiretap Act, and misappropriation of trade secrets, though TLS did not ultimately prevail, and again, Rodríguez admitted at least some of the allegations central to TLS's claims. *See* Dkt. 535 at 19, 22. In other words, TLS's claims had a reasonable basis.

---

[11] Defendants offer a litany of other examples of TLS's alleged bad faith in their reply brief, concluding that "[t]here are so many [other examples] that there is no need to even make an effort to review the docket report." Dkt. 604 at 3. "The purpose of a reply memorandum is not to file new arguments that could have been raised in a supporting memorandum." *Noonan v. Wonderland Greyhound Park Realty LLC*, 723 F. Supp. 2d 298, 349 (D. Mass. 2010) (citing *Wills v. Brown University*, 184 F.3d 20, 27 (1st Cir. 1999)). Accordingly, "theories offered for the first time in the reply brief are not preserved." *Wills*, 184 F.3d at 27. Because defendants' additional assertions regarding TLS's alleged bad faith could have been raised in their initial motion for attorney's fees but were not, I do not address those contentions.

Admittedly, the outcome TLS sought included an injunction that would have prevented defendants from using TLS's trade secrets and disclosing TLS's confidential information. This outcome, by definition, would have restrained defendants' ability to compete with TLS. But pursuing this objective does not, alone, evince bad faith on TLS's part. Rather, the law permits certain restrictions on a former employee's ability to compete with her former employer. *See PACIV, Inc. v. Perez Rivera*, —— P.R. Offic. Trans. ——, 159 D.P.R. 523, 526-27, 2003 WL 21212748 (P.R. May 19, 2003) (summarizing the circumstances under which a noncompetition agreement is valid); *Arthur Young*, 136 D.P.R. at 160 ("[N]oncompetition agreements, as a general rule, are valid."); *see also CVD, Inc. v. Raytheon Co*., 769 F.2d 842, 850 (1st Cir. 1985) ("Like the holders of other intellectual property rights, possessors of trade secrets are entitled to assert their rights against would-be infringers and to defend their rights in court."); *Santiago-Sepulveda v. Esso Stand. Oil Co. (Puerto Rico), Inc.*, 634 F. Supp. 2d 201, 210 (D.P.R. 2009) (upholding noncompete agreement and stating that employer has a "valid commercial interest in protecting its brand and its trade secrets"). Here, TLS did not ultimately prevail on its claim that defendants had misappropriated its trade secrets after the First Circuit determined that it had offered insufficient evidence regarding the existence of trade secrets. That decision, however, was rendered after a trial on the merits and a district court decision finding that TLS had established both the existence of trade secrets and their misappropriation. That TLS succeeded to this degree suggests that its trade secret claims had at least a reasonable basis. And defendants have not offered evidence indicating that TLS knew it could not establish the existence of trade secrets. *See CVD, Inc.*, 769 F.2d at 851 (explaining that, in the antitrust context, a plaintiff who asserts a trade secret claim "with the knowledge that no trade secrets exist, for the purpose of restraining competition" does so in bad faith). Similarly, TLS's breach of contract claims failed on appeal, but this was true because its nondisclosure agreement was held unenforceable as a matter of first impression under Puerto Rico law. That TLS lost on a question of novel Puerto Rico law does not demonstrate that it brought breach of contract claims in bad faith. Indeed, courts had previously upheld nondisclosure provisions in employment contracts even where a noncompete clause was unenforceable. *See, e.g.,*

*Cherena v. Coors Brewing Co.*, 20 F. Supp. 2d 282, 288–89 (D.P.R. 1998) ("Thus, although the non-competition clause is null and void, the rest of the provisions contained in the Agreement, including the nondisclosure provisions, are valid and enforceable."); *Jimenez v. Island Oasis Frozen Cocktail Co., Inc.*, CIV. 09-1748 GAG, 2010 WL 3719216, at *7 (D.P.R. Sept. 14, 2010). TLS thus had some reason to believe that its nondisclosure provision was valid. In short, the fact that TLS raised certain claims against defendants but lost on appeal is not sufficient to show that its claims were brought in bad faith or with an aim to eliminate all possible competition by Rodríguez and destroy him professionally.

Defendants also argue that evidence of TLS's bad faith can be found in the ethics complaint TLS filed in an effort to have Rodríguez, a CPA, sanctioned for violations of the CPA Code of Ethics. *See* Dkt. 597-2. Specifically, they point to the following language from the ethics complaint to suggest that TLS's true motivation for filing suit was to eliminate all competition by Rodríguez:

> Rodríguez organized [] an entity created under the laws of Puerto Rico, *for the purpose of competing with our Company* while concurrently acting as our Managing Director with a responsibility to devote his full-time efforts and attention to our Company.

> Rodríguez copied, shared and kept confidential information of our Company with the intention of obtaining an unfair advantage for himself and for GOS, the entity through which he does business and provides professional services, and misrepresented our confidential and proprietary information to third parties on which he has built his business as information that he was and is legally entitled to use.

> Rodríguez also shared our confidential information with third parties such as colleagues and clients (potential and otherwise), which in and of itself was unauthorized, *with the additional goal of stealing clients from our Company*. These actions *helped him compete against us* and to gain inappropriate benefit from our Company's confidential information, in contravention of the relevant covenants he had agreed to with our Company.

*Id.* at 3 (emphasis added). I agree with defendants that this language indicates that TLS's litigation was motivated at least in part by a desire to limit Rodríguez's ability to compete with TLS. As explained above, however, the law permits certain limits on a former employee's ability to compete, and this language does not suggest that TLS aimed to reach beyond that which the law allows. Rather, at the time TLS sent the ethics complaint, it had won judgment that Rodríguez breached the nondisclosure agreement and misappropriated TLS's trade secrets, and a permanent

injunction had issued preventing Rodríguez from using TLS's confidential information and trade secrets. Under these circumstances, TLS could have reasonably believed that, to the degree it wished to limit Rodríguez's ability to compete by using TLS' confidential information, the law would allow such limits on competition. The fact that TLS expressed its concern that Rodríguez had been able to "steal[] clients" and "compete against [TLS]" by using TLS's confidential information, thus, does not show that TLS's motivations were beyond the pale.

Nor does the mere fact that TLS filed an ethics complaint against Rodríguez demonstrate that it acted in bad faith in bringing the instant suit. Again, because TLS had won its case after trial, it could reasonably believe that Rodríguez's conduct—which the district court had found constituted misappropriation of trade secrets and breach of a nondisclosure agreement—might also violate Rodríguez's ethical obligations as a CPA. And defendants have not shown otherwise. In other words, TLS's ethics complaint demonstrates that it aimed to take advantage of all legal avenues by which it might limit Rodríguez's ability to compete. But it does not show that TLS planned to eliminate competition unlawfully or take some other action so nefarious that the court ought to shift attorney's fees under its inherent powers—a tool that "should be used sparingly and reserved for egregious circumstances." *F.A.C.*, 563 F.3d at 6 (internal quotation marks and citations omitted). As such, defendants' motion for attorney's fees based on TLS's alleged bad faith is denied.

Finally, I note that TLS seeks attorney's fees under 28 U.S.C. § 1927, arguing, inter alia, that defendants' counsel has vexatiously multiplied the proceedings, harassed TLS with baseless accusations of criminal wrongdoing, and made false statements to this court. Dkt. 600 at 15-16. TLS raised this argument in an opposition brief rather than by separate motion, and the question has not been fully briefed. Should TLS wish to pursue sanctions against defendants, it shall do so by separate motion.

## CONCLUSION

For the above reasons, defendants' motion for attorney's fees is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of June, 2021.

**S/Bruce J. McGiverin**
BRUCE J. MCGIVERIN
United States Magistrate Judge